## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## BEAUMONT DIVISION

| | | |
|---|---|---|
| MALAYA F. DAVIS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 1:20-cv-562 |
| | § | |
| CENLAR FSB and CITIMORTGAGE, INC., | § | With Jury Demand Endorsed |
| | § | |
| Defendants. | § | |

## COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Plaintiff Malaya F. Davis ("Plaintiff"), by and through counsel, for her Complaint against Defendants Cenlar FSB ("Cenlar") and CitiMortgage, Inc. ("CitiMortgage") (Cenlar and CitiMortgage are collectively referred to as the "Defendants"), states as follows:

### I. INTRODUCTION

1.      Defendant Cenlar, acting as a mortgage servicer for CitiMortgage, the mortgagee, at all times, engaged in willful, malicious, deceptive and harassing actions against Plaintiff in furtherance of their efforts to illegally collect a mortgage debt from her when Defendants were legally forbidden against making any contact with Plaintiff or taking any collection actions against her, after her surrender of the collateral real property, during the pendency of Plaintiff's Chapter 7 bankruptcy case, after the debt was discharged as to her personal liability, and after a lawsuit asserting similar illegal acts had been filed and settled.  Defendant(s)'s actions at issue include: 1) Cenlar sending Plaintiff statements demanding payment in a specified dollar amount due by a date certain; 2) Cenlar sending Plaintiff letters and other correspondence to coerce payment from her or actions to result in her payment; and 3) CitiMortgage impermissibly obtaining and using her

confidential, personal and financial information in her protected credit file and consumer report with Equifax.  Defendant(s)'s actions were taken in accordance with their policies, procedures, practices and malicious design to illegally profit by taking advantage of unsophisticated consumers.

2.      Specifically, Plaintiff claims Defendant(s) violated: 1) Tex. Fin. Code § 392.001 *et seq.,* known as the Texas Debt Collection Act ("TDCA"); 2) the common law prohibiting invasion of privacy; 3) the discharge injunction of the United States Bankruptcy Court for the Eastern District of Texas, Beaumont Division; and 4) Chapter 41, the Consumer Credit Protection Credit Act, of Title 15 (Commerce and Trade) of the United States Code, specifically, 15 U.S.C. § 1681, *et seq*., known as the Fair Credit Reporting Act ("FCRA") (against CitiMortgage only).  Plaintiff seeks to recover from Defendants actual, statutory, and punitive damages, and legal fees and expenses.

## II. Parties

3.      Plaintiff is a natural person residing in Nacogdoches County, Texas and a "consumer," as defined by the FCRA, 15 U.S.C. § 1681a(c), and the TDCA, Tex. Fin. Code § 392.001(1).

4.      Defendant Cenlar is a federal savings bank that may be served by delivering a summons to its Executive Vice Present, Chief Operations Officer, Robert Lux, 425 Phillips Boulevard, Ewing, NJ 08618.

5.      Defendant CitiMortgage is a foreign limited liability company which may be served by delivering citation to its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, TX 75201.

6.      Defendant(s) is/are a "creditor," "debt collector," and/or "third-party debt collector" under the TDCA, Tex. Fin. Code §§ 392.001(3)(6) and (7).

7.     Defendant(s) is/are a "person," as defined by the FCRA, 15 U.S.C. § 1681a(b).

8.     The debt Defendant(s) were attempting to collect from Plaintiff was a "consumer debt," as defined by Tex. Fin. Code § 392.001(2).

9.     Defendant(s) is/are a "user" of consumer credit and other financial information under the FCRA and a furnisher of consumer credit information to national consumer reporting agencies Trans Union, LLC ("TransUnion"), Equifax, Inc. ("Equifax"), and/or Experian Information Solutions, LLC ("Experian") (collectively the "CRAs").

### III. JURISDICTION AND VENUE

10.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1334 and 1367 and 15 U.S.C. § 1681p.

11.     Venue is proper this district, because Defendants transact business in this district, Plaintiff filed her bankruptcy case in this district, and the conduct complained of occurred in this district.

### IV. FACTUAL ALLEGATIONS

**A.     The Subject Debt was Included in Plaintiff's Bankruptcy Case and Discharged as to her Personal Liability.**

12.     On June 14, 2019, Plaintiff filed Chapter 7 bankruptcy in case number 19-90157 (the "Bankruptcy Case") in the United States Bankruptcy Court for the Eastern District of Texas, Beaumont Division (the "Bankruptcy Court").

13.     On "Schedule D: Creditors Who Have Claims Secured by Property" ("Schedule D") filed with her bankruptcy petition, Plaintiff listed a claim for Account Number xxxxxx4179 (the "Account"), identifying Cenlar as the creditor for the debt, related to a mortgage she once had jointly with her ex-husband, secured by real property located at 1941 Tidwell Rd., Diboll, TX

75941 (the "Property"), which Plaintiff had permanently vacated prior to filing her Bankruptcy Case.

14.     A true and correct copy of Plaintiff's Schedule "D" is attached hereto as Exhibit "A."

**1)     Plaintiff Filed a Notice of Her Surrender of the Collateral Real Property for the Debt in her Bankruptcy Case.**

15.     Plaintiff also listed the Property in "Schedule A/B: Property" ("Schedule A/B") of her bankruptcy petition, specifying that the Property was "granted to Ex-Husband in Divorce."  As of May 8, 2019, Plaintiff had no right, title, interest or claim to the Property, as noted in her Final Decree of Divorce.

16.     A true and correct copy of relevant portions of Plaintiff's Schedule A/B is attached hereto as Exhibit "B" and incorporated herein by reference.

17.     On June 14, 2019, Plaintiff filed in her Bankruptcy Case a "Statement of Intention for Individuals Filing Under Chapter 7" ("Statement of Intent"), stating her surrender of the Property and identifying Cenlar as the creditor for the related claim for which the Property was collateral.

18.     A true and correct copy of the Plaintiff's Statement of Intent is attached hereto as Exhibit "C."

**2)     Defendants Received Notice of Plaintiff's Bankruptcy Case and the Imposition of the Automatic Stay, Prohibiting all Collections Against Plaintiff.**

19.     On or about June 19, 2019, the Bankruptcy Noticing Center for the Bankruptcy Court sent Cenlar notice of Plaintiff's Bankruptcy Case, by sending Cenlar by first class mail a copy of the "Notice of Chapter 7 Bankruptcy Case – No Proof of Claim Deadline" (known as a "341 Notice").  The 341 Notice informed all creditors about Plaintiff's Bankruptcy Case and the automatic stay imposed by 11 U.S.C. § 362, noting that "[t]he filing of the case imposed an

automatic stay against most collection activities."  Also, the 341 Notice stated, in part, "Creditors cannot demand repayment from debtors by mail, phone, or otherwise."  Further, it informed all creditors that they cannot try to collect from the debtors by taking any collection actions against them or their property, noting that "Creditors who violate the stay can be required to pay actual and punitive damages and attorney's fees."

20.     A true and correct redacted copy of the 341 Notice is attached hereto as Exhibit "D."

21.     The United States Postal Service did not return the 341 Notice sent to Cenlar, creating a presumption it was received.

22.     On July 9, 2019, CitiMortgage made an appearance in the Bankruptcy Case and filed a Notice of Appearance through its counsel.

**3)     The Debt was Discharged as to Plaintiff's Personal Liability and the Discharge Injunction Went into Effect.**

23.     On October 2, 2019 the Bankruptcy Court issued an order granting Plaintiff a discharge ("Discharge Order").  The Discharge Order followed Official Form 318, including the explanatory language contained therein about the effect of the discharge.  The Discharge Order discharged Plaintiff from any liability for the debt created by the Account.  Included with the Discharge Order was an explanation of the general injunction prohibiting any attempt to collect discharged debts, warning all creditors, in conspicuous language, that "**Creditors cannot collect discharged debts**" and that "Creditors cannot contact the debtors by mail, phone, or otherwise in any attempt to collect the debt personally.  Creditors who violate this order can be required to pay debtors damages and attorney's fees."

24.     On October 4, 2019 the Bankruptcy Noticing Center mailed a copy of the Discharge Order to Defendants by first class mail.  These mailings, which were not returned, constituted

notice to Defendants of the discharge granted in Plaintiff's Bankruptcy Case and the replacement of the automatic stay of 11 U.S.C. § 362 with the discharge injunction imposed by 11 U.S.C. § 524(a).

25.     A true and correct redacted copy of the Discharge Order is attached hereto as Exhibit "E."

26.     At no time during the pendency of Plaintiff's Bankruptcy Case did Defendants or any other person or entity object to or dispute the details or completeness of the claim regarding the Account listed on Schedule "D" to Plaintiff's Petition.

27.     At no time did Plaintiff reaffirm the debt on the Account with any person or entity.

28.     At no time did the Bankruptcy Court declare the debt on the Account to be non-dischargeable.

29.     At no time after Plaintiff filed her Bankruptcy Case did she inform Defendants she had an interest in retaining the surrendered Property.

**B.     During Plaintiff's Bankruptcy Case and after the Debt was Discharged, Plaintiff Alleged that Defendant(s) Engaged in Prohibited, Harassing and Deceptive Collection Actions Against Plaintiff.**

30.     Plaintiff asserts that following Plaintiff's initial filing of her bankruptcy petition, during the pendency of her Bankruptcy Case, and continuing after Plaintiff received a discharge of the debt on the Account, Defendants engaged in illegal conduct by trying to collect on the Account from Plaintiff personally and coerce or deceive her into making payments to Defendant(s) or take actions resulting in her payment on the discharged Account.  As a result of this belief, Plaintiff filed suit in the United States District Court for the Eastern District of Texas, Beaumont Division, in Civil Action No. 1:20-cv-00109, *Malaya F. Davis vs. Cenlar FSB, et. al.* (herein called the "Action").

1)      **Plaintiff's Cease and Desist Request to Defendant(s).**

31.      On at least one occasion, either during the pendency of Plaintiff's Bankruptcy Case or soon after receiving her discharge, Plaintiff made a cease and desist request to Cenlar when one of its representatives called her.  Plaintiff requested Cenlar stop calling her and sending her statements and letters on the Account; yet, Cenlar continued its collection actions against her and offensive contacts**.**

32.      Defendant(s) continued their *in personam* collection attempts against Plaintiff on the Account after the debt was discharged as to her personal liability in her Bankruptcy Case, even though the permanent discharge injunction prohibiting all contacts with Plaintiff to further collection attempts was in effect.

33.      On September 3, 2020, Plaintiff and Defendants entered into a settlement agreement resolving all issues asserted in the Action (the "Settlement").

2)      **After the Discharge and Settlement of the Action, Cenlar Sent Plaintiff Loan Statements and Letters on the Account for Collection Purposes; Some Examples of These are in the Following Paragraphs.**

34.      On or about September 25, 2020, Defendant Cenlar sent Plaintiff a letter claiming that Plaintiff had requested an update to her contact information; however, Plaintiff had made no such request.

35.      A true and correct redacted copy of the letter dated September 25, 2020 which Cenlar sent to Plaintiff is attached hereto as Exhibit "F."

36.      On or about October 1, 2020, despite the Settlement of the Action and the clear understanding that Plaintiff wanted no further contact from the Defendants, Defendant Cenlar sent Plaintiff a regular Loan Statement misrepresenting that a payment of $17,099.04, including a $16.25 property inspection fee, was due and owing with a Payment Date of November 1, 2020, complete with payment coupon and return envelope, stating "Please return this portion with your

payment" and to "Make Checks Payable To: Cenlar, Central Loan Administration & Servicing," that the total Outstanding Principal balance of the Account was $115,456.92, and providing detailed information about making payments on the reverse side.

37.     A true and correct redacted copy of the Loan Statement dated October 1, 2020 which Cenlar sent to Plaintiff is attached hereto as Exhibit "G."

38.     On or about November 2, 2020, despite the Settlement of the Action and the clear understanding that Plaintiff wanted no further contact from the Defendants, Defendant Cenlar sent Plaintiff a regular Loan Statement misrepresenting that a payment of $18,000.23, including a $16.25 property inspection fee, was due and owing with a Payment Date of December 1, 2020, complete with payment coupon and return envelope, and stating "Please return this portion with your payment" and to "Make Checks Payable To: Cenlar, Central Loan Administration & Servicing," that the total Outstanding Principal balance of the Account was $115,456.92, and providing detailed information about making payment on the reverse side.

39.     A true and correct redacted copy of the Loan Statement dated November 2, 2020 which Cenlar sent to Plaintiff is attached hereto as Exhibit "H."

40.     On or about December 1, 2020, despite the Settlement of the Action and the clear understanding that Plaintiff wanted no further contact from the Defendants, Defendant Cenlar sent Plaintiff a regular Loan Statement misrepresenting that a payment of $18,901.42, including a $16.25 property inspection fee, was due and owing with a Payment Date of January 1, 2021, complete with payment coupon and return envelope, and stating "Please return this portion with your payment" and to "Make Checks Payable To: Cenlar, Central Loan Administration & Servicing," that the total Outstanding Principal balance of the Account was $115,456.92, and providing detailed information about making payment on the reverse side.

41.     Defendant(s) took their post-discharge in personam collection actions against Plaintiff even after: 1) they knew the debt was discharged in Plaintiff's Bankruptcy Case; 2) they knew Plaintiff had surrendered the Property; 3) they knew Plaintiff had not expressed any interest in retaining the Property after she filed her Bankruptcy Case; 4) they knew Plaintiff had made a cease and desist request to Cenlar to stop calling her and sending her statements and letters on the discharged Account; and 5) the Parties had settled the previous Action asserting similar violations by the Defendant(s).

42.     To the extent any of the statements or letters at issue contained a message that they were being sent for informational purposes, the overwhelming format, presentation of letter and print font size or characteristics, and other representations in the letters or statements and detachable payment coupons, make it evident that the statements and letters were sent for collection purposes and to seek payment, either specifically, deceptively or coercively.   For example, the Loan Statements expressly seek from Plaintiff a "Payment Amount," stated in a specified dollar amount, by a specific "Payment Date," and show that other fees and charges have been or may be assessed to the Account, post-discharge, if the demanded payment was not received.   Also, they include detailed payment instructions.

> **3)   Post-Discharge of the Debt, Long After Plaintiff's Surrender of the Collateral, and After Settlement of the Previous Action, CitiMortgage Impermissibly Obtained and Used Plaintiff's Equifax Consumer Report and Plaintiff's Confidential Information Therein.**

43.     On at least three occasions after the debt on the Account had been discharged in Plaintiff's Bankruptcy Case and the parties had settled the Action, CitiMortgage impermissibly accessed Plaintiff's protected Equifax credit file containing her confidential, personal and financial information and obtained and used her consumer report(s) from Equifax to further its *in personam* collection attempts against Plaintiff on the discharged debt.

44.     In order to obtain and use Plaintiff's consumer reports, CitiMortgage misrepresented information to Equifax about the status of the discharged Account, representing to Equifax the Account was open, past due and owing by Plaintiff, and therefore, it had a legally permissible purpose to conduct account reviews and access Plaintiff's credit file and obtain her consumer report.  CitiMortgage's purported permissible purpose, however, was false, because once the debt on the Account was discharged in Plaintiff's Bankruptcy, the Account was closed with a zero-balance due and owing.

45.     The dates CitiMortgage conducted the impermissible account reviews were: October 9, 2020, November 10, 2020 and December 14, 2020.

46.     A true and correct redacted copy of relevant excerpts from Plaintiff's Equifax credit report dated December 17, 2020 showing information about CitiMortgage's impermissible account review inquiries at issue are attached hereto as Exhibit "I."

### V.  GROUNDS FOR RELIEF – COUNT I

### TEXAS FINANCE CODE – TEXAS DEBT COLLECTION ACT (TDCA)

47.     Plaintiff repeats, re-alleges, and incorporates by reference the foregoing paragraphs, as if fully rewritten here.

48.     Defendant(s), through all of their post-discharge collection actions at issue, have violated the Texas Finance Code in numerous ways, including, but not limited to, the following:

>     a.    Tex. Fin. Code § 392.301(a)(8), which prohibits Defendants from threatening to take an action prohibited by law.  Inasmuch as: 1) the bankruptcy discharge injunction prohibits anyone from attempting to collect debts discharged in bankruptcy *in personam*; and 2) the common law protects Plaintiff's privacy rights, Defendant(s)'s actions at issue and demands for payment on the Account from Plaintiff were threats of continued harassing contacts and *in personam* collection attempts on the discharged debt, which violated the TDCA;

b.  Tex. Fin. Code § 392.303(2), which prohibits Defendants from collecting or attempting to collect interest or a charge, fee, or expense incidental to the obligation unless the interest or incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer. Inasmuch as Defendant(s) were attempting to collect from Plaintiff post-discharge, interest and fees Defendant(s) assessed to the Account post-discharge, for example for late fees, property inspection fees or attorneys' fees, Defendant(s) violated this section of the TDCA;

c.  Tex. Fin. Code § 392.304(a)(8), which prohibits misrepresenting the character, extent, or amount of Plaintiff's debt. Defendant(s) misrepresented to Plaintiff that the Account, which had been discharged, was past due, owing and collectible from Plaintiff in post-discharge: statements and correspondences sent to Plaintiff, and on her Equifax credit report in conjunction with the CitiMortgage's account review inquiries at issue, these were misrepresentations of the character, extent or amount of the subject debt, in violation of the TDCA;

d.  Tex. Fin. Code § 392.304(12), which prohibits representing that a consumer debt will be increased by the addition of attorney's fees, investigation fees, service fees, or other charges if a written contract or statute does not authorize the additional fees or charges.  Since 11 U.S.C. § 524 prohibits Defendants from attempting to collect on the discharged debt on the Account, as Plaintiff was no longer personally liable for it upon discharge, for the same reasons stated in the preceding paragraph (b), above, Defendant(s) violated this section of the TDCA; and

e.  Tex. Fin. Code § 392.304(a)(19), which prohibits Defendant's use of false representations or deceptive means to collect a debt, for the reasons stated in the preceding paragraphs (a-d); Defendant(s), through their false representations at issue and deception, intentionally tried to coerce or deceive Plaintiff into paying the discharged debt on the Account, knowing the debt on the Account was discharged in Plaintiff's Bankruptcy Case, rendering the debt legally uncollectible from Plaintiff *in personam*.

49.  Under Tex. Fin. Code Ann. § 392.403, Defendant(s)'s actions make them liable to Plaintiff for actual damages, statutory damages, injunctive relief, costs, and reasonable attorney's fees.  Also, Plaintiff's injuries resulted from Defendant's malice, actual fraud and/or willful and intentional misconduct, entitling Plaintiff to punitive damages.

50.     Because of Defendant's conduct, Plaintiff was forced to hire counsel to pursue this action, and Plaintiff's recoverable damages include her reasonable attorney's fees incurred in prosecuting this claim.

## VI.  GROUNDS FOR RELIEF - COUNT II

### INVASION OF PRIVACY

51.     Plaintiff repeats, re-alleges, and incorporates by reference all previous paragraphs above, as if rewritten herein their entirety.

52.     At all pertinent times, Plaintiff had a reasonable and lawful expectation not to be contacted and harassed by Defendant(s) during her Bankruptcy Case and post-discharge.

53.     Defendant(s)'s contacts with Plaintiff by sending the subject Loan Statements and other letters or notices on the Account at issue, as well as CitiMortgage impermissibly accessing Plaintiff's protected credit file and consumer reports from Equifax, by conducting the post-discharge account review inquiries at issue, were invasions of Plaintiff's private affairs and privacy rights.  These wrongful acts of Defendant(s) caused injury to Plaintiff.

54.     CitiMortgage impermissibly obtaining Plaintiff's consumer report(s) from Equifax were invasions that would be highly offensive to a reasonable person, because Plaintiff's confidential, sensitive, personal and financial information was and is included in her Equifax consumer report(s) and credit file, which CitiMortgage accessed with no permissibly reason.  The information CitiMortgage accessed and obtained about Plaintiff is private, protected, and not for public dissemination.  Post-discharge, Plaintiff had not consented to Defendant(s) pulling her credit reports or accessing her protected credit files with any of the CRAs, and Defendant(s) had no permissible purpose to obtain or use her consumer reports post-discharge.  The wrongful acts of CitiMortgage caused injury to Plaintiff.

55.     Plaintiff's expectation not to contacted and harassed by Defendants on the Account was reasonable and lawful.  Plaintiff had surrendered and permanently vacated the Property prior to filing her Bankruptcy Case and had not expressed any interest in retaining the Property afterwards.  Moreover, the discharge injunction was in place during all times at issue, which prohibited Defendants from contacting her about the Account seeking collections from her.  In fact, Plaintiff indicated in the Schedule A/B of her bankruptcy petition, that the Property was awarded to her ex-husband in her prior divorce proceeding and further noticed Defendants in her Statement of Intent that the Property had been surrendered by her.  Moreover, Plaintiff did not have any other business dealings with Defendants other than the Account.

56.     Further, the 341 Notice and Discharge Order expressly state that Creditors cannot contact the debtors by mail, phone, or otherwise in any attempt to collect the debt personally.  After Plaintiff filed her Bankruptcy Case, she also informed Defendant(s) representatives who called her to stop contacting her.

57.     Plaintiff's belief that Defendant(s) would not contact her during the times at issue was reasonable and justified.  Such wrongful acts and contacts by Defendant(s) caused injury to Plaintiff which resulted in, or further exacerbated, her emotional anguish, mental distress, loss of time, and inconvenience, as well as other harm.

58.     Plaintiff's injuries resulted from Defendant's malice, which entitles Plaintiff to exemplary damages under Texas Civil Practice and Remedies Code §41.003(a).

### VII.  GROUNDS FOR RELIEF- COUNT III

### VIOLATION OF THE DISCHARGE INJUNCTION

59.     Plaintiff repeats, re-alleges, and incorporates by reference all previous paragraphs above, as if set forth herein in their entirety.

60.     At all material times, Defendant(s) had actual knowledge of Plaintiff's Bankruptcy Case and the discharge of the debt on the Account.

61.     Defendant(s) attempted to collect from Plaintiff personally on the Account and underlying debt or to coerce Plaintiff to take actions to benefit Defendant(s), as evidenced by Cenlar sending of the Loan Statements,  and other correspondences and notices after she filed her Bankruptcy Case all after she had surrendered and vacated the Property, informed Defendant(s) of her surrender, and entered into the Settlement of the Action which had asserted the same or similar violations.  Further evidence of Defendants' in personam collection attempts against Plaintiff during the times at issue was that CitiMortgage was conducting impermissible account review inquiries on Plaintiff and the Account with Equifax, so it could indirectly misrepresent information to Plaintiff on her credit report regarding its inquiries, reporting as if the Account was still open, past due and collectible from her, and so CitiMortgage could collect confidential information about Plaintiff to skip trace her and further Defendants' *in personam* collection efforts against her.

62.     The actions of Defendants constitute harassment and coercive and/or deceptive actions taken to collect a discharged debt from Plaintiff, in gross violation of the discharge injunction imposed by 11 U.S.C. § 524(a)(1)-(3).

63.     Defendant(s)'s failure to comply with the aforesaid laws, in light of being on notice of Plaintiff's Bankruptcy Case and discharge, surrender of the collateral Property, and the effect of the discharge as to the subject debt on the Account, illustrates its contempt for federal law and the discharge injunction and is a willful violation of the orders and injunctions of the Bankruptcy Court as they concern the Bankruptcy Case filed by Plaintiff.

64.     Defendant(s) knowingly and willfully violated the orders and injunctions of the Bankruptcy Court issued in the bankruptcy filed by Plaintiff.  After this *prima facie* showing by Plaintiff, the duty falls on Defendants to show, as its only defense, a present inability to comply

with the orders and injunctions of the Bankruptcy Court, which inability must go beyond a mere assertion of inability.  Failing a showing by Defendants of their present inability to comply with the orders and injunctions of the Bankruptcy Court, Plaintiff must prevail on her claims, and Defendants must be held liable for knowingly and willfully violating the orders and injunctions of the Bankruptcy Court.  Any defense put forth by Defendant(s) in this proceeding can only constitute a good faith exception, as no other reasonable explanation can be made for the conduct and actions of Defendant(s).  Any allegation of a good faith exception should not be allowed.

65.     Specifically, Defendant(s) violated the part of the Bankruptcy Court's Discharge Order issued pursuant to 11 U.S.C. § 524(a)(2) that "operates as an injunction against the commencement, or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtors, whether or not the discharge of such debt is waived . . ."

66.     No exceptions exist under 11 U.S.C. 524 or the other provisions of the United States Bankruptcy Code or other applicable law that permit the conduct of Defendant(s) at issue with regard to the discharge injunction, as stated above.

67.     The orders and injunctions of the Bankruptcy Court cannot be waived, except by way of a properly filed and approved reaffirmation agreement, motion, stipulation or complaint, none of which occurred here.  No waiver of the orders or injunctions of the Bankruptcy Court has occurred.

68.     Also, there is no requirement of mitigation on the part of Plaintiff that is relevant to Defendant's violations of the orders and injunctions of the Bankruptcy Court.  Any burdening of Plaintiff with an obligation to police the misconduct of Defendants would be a complete derogation of the law.  It is well-settled that each party to an injunction or order of the Court is responsible for ensuring its own compliance with the injunction or order and for bearing the cost

of compliance.  Any attempt by Defendants to mount such a defense would constitute a collateral attack on the injunctions and orders of the Bankruptcy Court in this proceeding, which is prohibited.  Any such defense put forth by Defendants in this case can only constitute a claim of mitigation, as no other reasonable explanation can be made for the conduct and actions of Defendants.  No defense of failure to mitigate should be allowed.

69.     Plaintiff has been injured and damaged by Defendants' actions, and Plaintiff is entitled to recover judgment against Defendants for actual damages and punitive damages, plus an award of costs and reasonable attorney's fees, for Defendants' violations of 11 U.S.C. § 524 and pursuant to the Court's powers under 11 U.S.C. § 105.

## VIII.  GROUNDS FOR RELIEF - COUNT IV

### FAIR CREDIT REPORTING ACT (FCRA 15 U.S.C. §1681 *et seq.*)

70.     Plaintiff repeats, re-alleges, and incorporates by reference all previous paragraphs above, as if set forth herein in their entirety.

71.     Plaintiff brings claims against CitiMortgage under the FCRA under 15 U.S.C. §§ 1681n and o, entitling Plaintiff to relief against CitiMortgage for damages and attorney's fees for obtaining and using Plaintiff's consumer report under false pretenses or knowingly without a permissible purpose or negligently failing to comply with the requirements imposed by the FCRA, respectively.

72.     Post-discharge of the debt on the Account, CitiMortgage impermissibly accessed Plaintiff's credit file with Equifax and obtained and used her consumer report containing her confidential, personal and financial information by conducting account review inquiries with no legally permissible purpose.   CitiMortgage's Account Review Inquiries are examples of its impermissible pulls of Plaintiff's credit and prohibited action.  *See* attached Exhibit "I."

73.     The FCRA establishes very specific limits as to when and why an entity can obtain

a consumer report:

> (f) CERTAIN USE OR OBTAINING OF INFORMATION PROHIBITED. – A person shall not use or obtain a consumer report for any purpose unless –
>
> (1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and
>
> (2) the purpose is certified in accordance with section 1681e of this title by a prospective user of the report through a general or specific certification.

15 U.S.C. § 1681b (f).

74.     Section 1681b(a)(3) of the FCRA lists the only purposes for which a consumer

report can be obtained; it states, in relevant part:

> (a) IN GENERAL. – * * * any consumer reporting agency may furnish a consumer report under the following circumstances and no other:
>
>> ***
>
> (3) To a person which it has reason to believe –
>
>> (A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer;
>>
>> ***
>>
>> (E) intends to use the information, as a potential investor or servicer, or current insurer, in connection with a valuation of, or an assessment of the credit or prepayment risks associated with, an existing credit obligation; or
>>
>> (F) otherwise has a legitimate business need for the information-
>>
>> * * *
>
> (ii) to review an account to determine whether the consumer continues to meet the terms of the account.

*See* 15 U.S.C. § 1681b (a)(3).

75.     Section 1681a(d)(1) defines a "consumer report" as:

> (d) CONSUMER REPORT. –
>
> (1) IN GENERAL. – The term "consumer report" means any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general

reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of servicing as a fact in establishing the consumer's eligibility for-

(A) credit or insurance to be used primarily for personal, family, or household purposes;

(B) employment purposes; or

(C) any other purpose authorized under section 1681(b) of this title.

15 U.S.C. § 1681a (d)(1).

76.     CitiMortgage furnished false information to Equifax, misrepresenting it had a legally permissible purpose to conduct an inquiry and review of the Account, so it could gain access to Plaintiff's protected credit file with Equifax and impermissibly obtain and use her confidential, personal and financial information in her consumer report(s).

77.     CitiMortgage represented to Equifax that its alleged permissible purpose for conducting the post-discharge reviews on the Account was because the Account was open, due, owing and collectible from Plaintiff, which was false.  At no time had Plaintiff had not sought credit from CitiMortgage or engaged in any business dealings with CitiMortgage, so there was no permissible purpose for CitiMortgage to pull Plaintiff's credit based on these reasons. Accordingly, there was no permissible purpose for CitiMortgage to obtain and use Plaintiff's consumer reports from Equifax which were illegally obtained.

78.     At all relevant times, CitiMortgage had actual knowledge that after, and as a result of, the discharge being granted in the Bankruptcy Case, the discharge injunction was in effect, legally prohibiting CitiMortgage from pursuing any collection against Plaintiff on the discharged Account.

79.     CitiMortgage also had actual knowledge Plaintiff had not authorized it to pull her credit and obtain and use her consumer reports from the CRAs, because there was no longer a debtor-creditor relationship between Plaintiff and CitiMortgage post-discharge after she

surrendered the Property.  Accordingly, CitiMortgage knew it was prohibited from obtaining and using Plaintiff's consumer reports and her confidential and personal information kept therein by any of the CRAs post-discharge.

80.     CitiMortgage impermissibly obtaining or using of Plaintiff's private personal and financial information held in her consumer reports from the CRAs, when CitiMortgage had actual knowledge it had no legally permissible purpose to do so, constitutes CitiMortgage's knowing and willful violations of the FCRA under, 15 U.S.C. §§ 1681n, or alternatively and at a minimum, negligent violations under 15 U.S.C. § 1681o.

81.     Plaintiff believes that, after reasonable discovery, she will be able to prove CitiMortgage obtained and used Plaintiff's consumer report(s), and private, personal and financial information therefrom, for the illegal purpose of attempting to collect on the discharged Account from Plaintiff personally.

82.     Plaintiff believes that, after reasonable discovery, she will be able to prove CitiMortgage used false pretenses, namely the representation(s) it made to Equifax that it intended to use Plaintiff's consumer report(s) for a permissible purpose, when, under the FCRA, CitiMortgage had no such permissible purpose to do so, in order to obtain and use Plaintiff's private, personal and financial information for the illegal purpose of attempting to collect the discharged debt on the Account from Plaintiff personally.

83.     Plaintiff believes that, after reasonable discovery, she will be able to prove CitiMortgage is unwilling or unable to prevent its system(s) or agents, from requesting and obtaining Plaintiff's consumer report(s) without a permissible purpose to do so, thereby subjecting Plaintiff to having her private, personal and financial information disclosed to CitiMortgage without her consent, authorization or other legal justification.

84.     As a direct and proximate result of CitiMortgage's conduct at issue, Plaintiff has suffered, and will continue to suffer, substantial injury, including, but not limited to, mental anguish and emotional distress, entitling Plaintiff to an award of actual and statutory damages in an amount to be proved at trial, plus attorneys' fees, together with the costs of this action, pursuant to 15 U.S.C. § 1681n or o.

85.     The injuries suffered by Plaintiff as a direct result of CitiMortgage impermissibly obtaining and using Plaintiff's consumer report(s) post-discharge were attended by circumstances of fraud, malice, and willful and wanton misconduct, entitling Plaintiff to punitive damages pursuant to 15 U.S.C. § 1681n(a)(2).  Because CitiMortgage 's impermissible acquisition and use of Plaintiff's consumer report(s) will have a continuing adverse impact on Plaintiff, and because the violations may be ongoing in nature, CitiMortgage is liable for any and all future harm suffered by Plaintiff as a result of CitiMortgage's actionable conduct.

86.     After being afforded a reasonable time to conduct discovery, Plaintiff believes she will be able to show that, at all relevant times, CitiMortgage knew, and continues to know, that a discharge order granted by a U.S. Bankruptcy Court means discharged debts are no longer collectible from discharged debtors, but CitiMortgage has made a corporate decision to willfully and maliciously act contrary to this knowledge in its calculated decision to violate its duty and requirement to furnish accurate information to the CRAs, by furnishing to the CRAs false information of a purported permissible purpose to access the credit files of and obtain confidential personal and credit information and consumer reports for discharged consumers, alleging accounts with discharged debt are open and collectible or that consumers with discharged debt CitiMortgage is servicing have applied for new credit, when they have not, all to further CitiMortgage's illegal *in personam* collection attempts on discharged debt.

## IX. VICARIOUS LIABILITY/*RESPONDEAT SUPERIOR*

87.     Plaintiff will be able to show, after reasonable discovery, that all actions at issue were taken by employees, agents, servants, or representatives, of any type, for Defendant(s), the principal, within the line and scope of such individuals' (or entities') express or implied authority, through employment, agency, or representation, which imputes liability on Defendant(s) for all such actions under the doctrine of *respondeat superior* and/or vicarious liability.  This includes, but is not limited to, CitiMortgage being liable for all acts of Cenlar at issue in this matter, as Cenlar was acting as the servicer of the Account and a duly authorized agent or representative of CitiMortgage at all times at issue.

## X. DAMAGES

88.     In addition to any damages previously stated hereinabove, the conduct of Defendant(s) have/has proximately caused Plaintiff past and future monetary loss; past and future mental distress, emotional anguish and a discernable injury to Plaintiff's emotional state; and other damages, evidence for all of which will be presented to the jury.  Moreover, dealing with the consequences of Defendant(s)'s actions has cost Plaintiff's time and mental energy, which are precious to her.

89.     At all relevant times, Defendants knew, and they continue to know, that, pursuant to a discharge order granted by a U.S. Bankruptcy Court, discharged debts are no longer legally collectible, but Defendant(s) made a corporate decision to act knowingly, willfully, maliciously, and contrary to their/its knowledge of bankruptcy law, to attempt to collect on the debt they knew had been discharged as a result of Plaintiff's Bankruptcy Case.  Defendant(s) had no right to engage in any of their actions at issue.

90.     Plaintiff believes that, after reasonable discovery in this case, she will be able to show that all actions taken by, or on behalf of, Defendant(s) were conducted maliciously,

wantonly, recklessly, intentionally, knowingly, and/or willfully, with the desire to harm Plaintiff, with the actual knowledge that such actions were in violation of the law.

91.     Plaintiff believes that, after reasonable discovery, she will be able to show that Defendant(s) have been involved in numerous disputes involving complaints about the type of conduct at issue here; nevertheless, Defendant(s), intentionally and knowingly, have refused to correct their policies and comply with applicable laws, of which laws they are well-aware.

92.     Plaintiff believes that, after reasonable discovery, she will be able to show that Defendant(s) have engaged in a pattern and practice of wrongful and unlawful behavior, in accordance with their established policies and procedures, with respect to knowingly, willfully, intentionally, and maliciously attempting to collect on debts included in an active bankruptcy or discharged in bankruptcy.  Accordingly, Defendant(s) are subject to punitive damages, statutory damages, and all other appropriate measures necessary to punish and deter similar future conduct by Defendant(s).  Moreover, Plaintiff's injuries resulted from Defendant(s)'s malice, and/or willful and intentional misconduct, entitling Plaintiff to punitive damages.

93.     Plaintiff believes that, after reasonable discovery, she will be able to show that Defendant(s)'s actions at issue were part of Defendant(s)'s illegal design(s), implemented in their policies and procedures, to profit by harassing unsophisticated debtors and collecting debts that had been included and discharged in each of debtor's bankruptcy cases.

94.     Due to Defendant(s)'s conduct, Plaintiff was forced to hire counsel, and her damages include reasonable attorney's fees incurred in prosecuting her claims.

WHEREFORE, PREMISES CONSIDERED, Plaintiff Malaya F. Davis prays the Court:

A.     Enter judgment in favor of Plaintiff and against Defendants, joint and severally, for statutory damages, actual damages, costs, and reasonable and necessary attorney's fees for

Defendant(s)'s violations of the TDCA, Plaintiff's privacy rights, and the discharge injunction and against CitiMortgage for violations of the FCRA;

B.     Find that appropriate circumstances exist for an award of punitive damages to Plaintiff;

C.     Award Plaintiff pre-judgment and post-judgment interest as allowed by law; and

D.     Grant such other and further relief, in law or equity, to which Plaintiff might show she is justly entitled.

Respectfully submitted,


/s/ James J. Manchee
James J. Manchee
State Bar Number 00796988
jim@mancheelawfirm.com
MANCHEE & MANCHEE, PC
5048 Tennyson Parkway, Suite 250
Plano, Texas 75024
(972) 960-2240 (telephone)
(972) 233-0713 (fax)

COUNSEL FOR PLAINTIFF

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

December 31, 2020                    /s/ James J. Manchee
Date                                           James J. Manchee